IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JERRY LYNN GILMORE, JR.                                    PLAINTIFF

V.                                   CIVIL ACTION NO. 1:15-cv-143-JCG

JACQUALINE LEVERETTE et al.                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Complaint filed pursuant to 42 U.S.C. § 1983 by Plaintiff Jerry Lynn Gilmore, Jr., a postconviction inmate in the custody of the Mississippi Department of Corrections (MDOC), who is proceeding *pro se* and *in forma pauperis.* Plaintiff alleges excessive force and violation of due process against Defendants who are correctional officers at South Mississippi Correctional Institution (SMCI). He seeks the expungement of two rule violation reports (RVRs) from his prison record and the restoration of his custody level to medium. Defendants have filed a Motion for Summary Judgment (ECF No. 26), and the Motion has been fully briefed. An omnibus hearing, which also operated as a *Spears* hearing,[1] was held on May 26, 2016. Having reviewed the submissions of the parties, the record, and applicable law, the Court finds that Defendants' Motion for Summary Judgment should be granted. Plaintiff's claims must be dismissed because Plaintiff failed to exhaust available administrative remedies before filing suit. Also, Plaintiff has not stated a cognizable claim for violation of due process.

---

[1] *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

# BACKGROUND

In 2009, Plaintiff was convicted in the Circuit Court of Jones County, Mississippi, of selling cocaine. *Gilmore v. Epps,* No. 2:12cv44-KS-MTP, 2012 WL 3309000 at *1 (S.D. Miss. Aug. 13, 2012) (dismissing Plaintiff's 28 U.S.C. § 2254 petition for habeas corpus). As a result, Plaintiff was sentenced to serve 30 years in the custody of MDOC. This suit concerns alleged actions occurring at SMCI where Plaintiff was housed in January 2015. At the time, Defendant Jacqualine Leverette was a disciplinary hearing officer, Defendant Marshall Turner was a warden, and the remaining Defendants – Officers Bartee, Davis, Polk, and Blakely – were correctional officers.

Plaintiff alleges that on January 10, 2015, he was wrongfully issued two RVRs. He received the first RVR for showering at 1 a.m. during a time when the showers were closed. (ECF No. 26-3, at 2). Plaintiff does not deny that he was in the shower at an unauthorized time but feels he was justified under the circumstances because he was preparing to go to work early in the morning as an orderly. Plaintiff lost one month of privileges as a result of being convicted on this RVR.

Later on January 10, 2015, Plaintiff was issued a second RVR after an incident between him and a female kitchen worker. The worker was employed by a company providing food services to SMCI. Plaintiff was cleaning the kitchen bathroom when he says that he offered the worker money in exchange for sexual favors. According to Plaintiff, he "fraternized" with the worker, which he knew was against the rules, but did nothing more than touch her arm. According to the

worker, Plaintiff attempted to throw her into the bathroom and rape her. The worker then allegedly overpowered Plaintiff and reported the incident.

Officers Bartee, Davis, Polk, and Blakely responded, and according to Plaintiff, they escorted him to an area of the prison that was not in view of the security cameras and punched him until he was unconscious. Officer Bartee kicked Plaintiff between the legs. When Plaintiff awoke, he was handcuffed and lying on the floor in the infirmary. His head was swollen, and he believes he sustained a mild concussion.

Plaintiff disputes the kitchen worker's account of what occurred but does not dispute that he touched her. Plaintiff was convicted of assault on the second RVR and punished with a loss of privileges, including losing trusty status, downgrade of his custody level to closed, and placement in administrative segregation. Plaintiff maintains that the punishment was excessive. He states that he was charged with causing bodily harm to the kitchen worker when he did not. He complains that the RVRs contained mistakes and administrative errors that make them invalid and in violation of due process.

## DISCUSSION

### A.  Summary Judgment Standard

Summary Judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment

shall be granted "if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the Court must construe "all facts and inferences in the light most favorable to the non-moving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

B.    Exhaustion of Available Administrative Remedies

1.    PLRA's exhaustion requirement

Under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the U.S.C.), prisoners are required to exhaust available administrative remedies prior to filing an action with respect to prison conditions:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The United States Supreme Court has held that § 1997e's exhaustion "language is 'mandatory.'" *Ross v. Blake,* 136 S. Ct. 1850, 1856 (2016). "And that mandatory language means a court may not excuse a failure to exhaust, even to take [any special] circumstances into account." *Id.* "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.*

"The prison's grievance procedures, and not the PLRA, define the remedies that are available and must thus be exhausted." *Cowart v. Erwin,* 837 F.3d 444, 451 (5th Cir. 2016). The United States Court of Appeals for the Fifth Circuit takes a "'strict' approach to § 1997e's exhaustion requirement, under which prisoners must not just substantially comply with the prison's grievance procedures, but instead must exhaust available administrative remedies *properly.*" *Id.* (emphasis in original) (quotation omitted). Exhaustion "is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010). "[J]udges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon,* 596 F.3d at 272.

MDOC utilizes a "formal two-step process for handling inmate grievances." *Yankton v. Epps,* 652 F. App'x 242, 245 (5th Cir. 2016) (citing Miss. Code § 47-5-801, *et seq.*; *Wilson v. Epps,* 776 F.3d 296, 300 n.2 (5th Cir. 2015)).

> "[T]o ensure their right to use the formal [ARP]," inmates "must make their request to the Adjudicator in writing within a 30 day period after an incident has occurred." [Inmate Handbook, MDOC, ch. VIII, sec. IV.] They are, however, discouraged from making repetitive requests and "are encouraged to continue to seek solutions to their concerns through informal means." [*See id.*]
>
> Prior to the "first step" of this procedure, the Adjudicator screens the request to determine whether it meets specified criteria. [*See id.* at ch. VIII, sec. V.] If a request fails to meet that criteria, the Adjudicator will reject it and notify the inmate via Form ARP-1. [*See id.* at ch. VIII, sec. VI.] If the request meets the criteria, however, the Adjudicator will accept it into the ARP, and the request will then proceed to the first step. At the first step, the appropriate MDOC

official receives the request via Form ARP-1 and provides a "first-step response" to the request via Form ARP-2. If the inmate is satisfied with this first-step response, he does not need to do anything further. If unsatisfied, however, the inmate may then proceed to the "second step" by indicating as much on the same Form ARP-2. At the second step, another appropriate MDOC official, such as a warden, provides the "second-step response" via Form ARP-3. If unsatisfied with the second-step response, the inmate may then bring a claim in court. [*See* Inmate Handbook, ch. VIII, sec. IV.]

*Id.*

### 2. Plaintiff did not complete the administrative process

Defendants' threshold argument is that Plaintiff failed to exhaust administrative remedies with respect to all of his claims before filing suit. Plaintiff submitted two ARP grievances on January 13, 2015, three days after receiving the RVRs. Plaintiff challenged the first RVR on grounds of "due process/administrative error. RVR doesn't have a Unit Admin Initial and incorrect date. RVR be dismissed and expunged from my file!" (ECF No. 26-1, at 6).

Plaintiff challenged the second RVR on grounds of "administrative error and due process violation. Wrong MDOC #, wrong housing location, and no evidence. My pink disciplinary copy has the wrong housing unit. RVR be dismissed on those grounds. And expunged from file." *Id.* at 4. Neither grievance submitted by Plaintiff alleges or mentions use of excessive force or assault.

Warden Turner signed a first-step response on February 18, 2015, indicating that he had reviewed the decision of the hearing officer, agreed with the hearing officer, and found no merit to Plaintiff's grievances regarding the RVR convictions

and punishments. *Id.* at 8. Plaintiff did not proceed to the "second step" of the ARP process. Accordingly, Plaintiff failed to properly exhaust available administrative remedies prior to filing suit. Plaintiff, at no time, filed a grievance regarding excessive force. Plaintiff's claims are barred by 42 U.S.C. § 1997e(a) and must be dismissed.

C.    <u>Failure to State a Claim</u>

Plaintiff alleges that Leverette and Turner violated his right to due process with respect to the two RVRs. Plaintiff alleges that the RVRs contained mistakes and administrative errors that make them invalid and in violation of due process. The administrative errors allegedly included the wrong location on an RVR, an incorrect prisoner number, and an incorrect date. Plaintiff claims that there was insufficient evidence to support his convictions on the RVRs. Plaintiff contends that the punishment he received was too harsh.

With respect to his complaints about the RVRs, Plaintiff has not alleged a violation of a constitutional right. An inmate does not have a federally protected liberty interest in having a prison grievance investigated or resolved to his satisfaction. *Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005). An inmate does not have a constitutional right to a grievance process that is responsive to his perceived injustices. *Jackson v. Dunn,* 610 F. App'x 397, 398 (5th Cir. 2015). Placement in administrative segregation or the loss of prison privileges does not implicate a liberty interest because those punishments generally do not represent "the type of atypical, significant deprivation in which a State might conceivably

create a liberty interest." *Sandin v. Conner,* 515 U.S. 472, 486 (1995); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995). A prisoner has no right to remain in a particular prison, and a change in a prisoner's classification or custody statutes does not implicate the due process clause. *Meachum v. Fano,* 427 U.S. 215, 224-25 (1979). Inmates have no constitutional right to trusty status. *See Blankenship v. Mack,* 3:13-cv-272-CWR-LRA, 2013 WL 4523580 (S.D. Miss. Aug. 27, 2013) (citing *McCord v. Maggio,* 910 F.2d 1248, 1250-51 (5th Cir. 1990)).

Insofar as Plaintiff seeks relief regarding the alleged violation of his due process rights resulting from prison disciplinary and grievance procedures, Plaintiff has failed to state a claim upon which relief may be granted. *See Morris v. Cross,* 476 F. App'x 783, 785 (5th Cir. 2012) (finding inmate's claims regarding grievance process were properly dismissed as frivolous.).

## CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment (ECF No. 26) is **GRANTED**. Plaintiff's claims are dismissed without prejudice for failure to exhaust administrative remedies. A separate final judgment will be entered as instructed by Federal Rule of Civil Procedure 58.

**SO ORDERED**, this the 21st day of June, 2017.

s/ *John C. Gargiulo*

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE